Case No. 23-3216

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

COMMONWEALTH OF KENTUCKY

*Petitioner*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and
MICHAEL S. REGAN, Administrator, United States Environmental Protection
Agency

*Respondents*

———————————————

Petition for Review of a Final Agency Action of the
United States Environmental Protection Agency

———————————————

## MOTION OF THE COMMONWEALTH
## OF KENTUCKY FOR A STAY PENDING REVIEW

———————————————

Daniel Cameron
 *Attorney General*
Victor B. Maddox
 *Deputy Attorney General*
Matthew F. Kuhn
 *Solicitor General*
Christopher L. Thacker
 *Assistant Deputy Attorney General*
Harrison Gray Kilgore
Michael R. Wajda
 *Assistant Solicitors General*
Marc Manley
 *Assistant Attorney General*

Office of the Kentucky
Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Michael.Wajda@ky.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION.............................................................................................. 1

BACKGROUND................................................................................................ 2

I. Statutory and regulatory background ...................................................... 2

II. Kentucky's ozone interstate transport SIPs ............................................ 3

A. Kentucky's SIP for the 2008 ozone NAAQS....................................... 3

B. Kentucky's SIP for the 2015 ozone NAAQS ....................................... 3

C. EPA Region 4's determinations regarding Kentucky's SIP ................. 6

D. EPA rushes to impose a FIP ............................................................. 8

E. EPA's final disapproval of Kentucky's SIP ........................................ 9

ARGUMENT .................................................................................................... 9

I.    Kentucky is likely to prevail on the merits. ....................................... 11

A.    EPA failed to follow the CAA. .................................................... 11

B.    EPA's bait-and-switch is arbitrary and capricious. ...................... 14

II.   Kentucky is suffering irreparable harm............................................. 19

III.  The remaining factors favor a stay.................................................. 20

CONCLUSION ............................................................................................... 21

CERTIFICATE OF COMPLIANCE .................................................................... 22

CERTIFICATE OF SERVICE ........................................................................... 23

ADDENDUM.................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Breeze Smoke, LLC v. U.S. Food & Drug Admin.*,
18 F.4th 499 (6th Cir. 2021) .................................................................. 10, 15

*Commonwealth v. Biden*,
57 F.4th 545 (6th Cir. 2023) .................................................................. 20, 21

*DHS v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) ................................................................................ 16

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ................................................................................ 17, 18

*Env't Integrity Project v. EPA*,
425 F.3d 992 (D.C. Cir. 2005) .................................................................... 15

*EPA v. EME Homer City Generation, L.P.*,
572 U.S. 489 (2014) ...................................................................................... 2

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) ................................................................................ 14

*Kentucky v. Biden*,
23 F.4th 585 (6th Cir. 2022) .................................................................. 19, 20

*Michigan v. EPA*,
268 F.3d 1075 (D.C. Cir. 2001) .............................................................. 2, 19

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................ 9, 10, 20

*Sierra Club v. EPA*,
356 F.3d 296 (D.C. Cir. 2004) .............................................................. 16, 17

*Sierra Club v. EPA*,
60 F.4th 1008 (6th Cir. 2023) ...................................................................... 2

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016) ........................................................ 3, 13, 19, 20

*Train v. Nat. Res. Def. Council, Inc.*,
421 U.S. 60 (1975) .................................................................................. 13, 14

**Statutes**

42 U.S.C. § 7401 ............................................................................. 13

42 U.S.C. § 7407 ......................................................................2, 13, 16

42 U.S.C. § 7410 ...................................................................... *passim*

5 U.S.C. § 706.................................................................................. 11

**Regulations**

2008 NAAQS,
    73 Fed. Reg. 16,436 (Mar. 27, 2008) ........................................... 3

2015 NAAQS,
    80 Fed. Reg. 65,292 (Oct. 26, 2015) ............................................ 3

2018 Ky. SIP Approval,
    83 Fed. Reg. 17,123 (Apr. 18, 2018) ......................................... 3, 8

Air Plan Disapprovals,
    88 Fed. Reg. 9,336 (Feb. 13, 2023) .................................... *passim*

Approval and Promulgation of Air Quality Implementation Plans; District of Columbia,
    Maryland, Virginia; 1-Hour Ozone Attainment Plans, Rate-of-Progress Plans,
    Contingency Measures, Transportation Control Measures, VMT Offset, and 1990
    Base Year Inventory,
    68 Fed. Reg. 19,106 (Apr. 17, 2003) ...................................... 13, 16

Approval and Promulgation of Air Quality State Implementation Plans; California; San
    Joaquin Valley; Moderate Area Plan for the 2006 PM2.5,
    81 Fed. Reg. 59,876 (Aug. 31, 2016)........................................... 16

Approval and Promulgation of Implementation Plans,
    78 Fed. Reg. 14,681 (Mar. 7, 2013) ............................................. 3

Determination of Attainment of the 1-Hour Ozone Standard; Determination Regarding
    Applicability of Certain Clean Air Act Requirements; Approval and Promulgation of
    Ozone Attainment Plan; San Francisco Bay Area, CA,
    69 Fed. Reg. 21,717 (Apr. 22, 2004) ...................................... 13, 16

Federal Implementation Plan Addressing Regional Ozone Transport for the 2015
    Ozone National Ambient Air Quality Standard,
    87 Fed. Reg. 20,036 (Apr. 6, 2022) .............................................. 8

Proposed Ky. SIP Disapproval,
    87 Fed. Reg. 9,498 (Feb. 22, 2022) .................................... *passim*

## Other Authorities

EPA, *Federal Implementation Plan Addressing Ozone Transport for the 2015 Ozone Ambient Air Quality Standards: Informational Webinar* (Mar. 2022) ........................................................ 8

Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards (Mar. 15, 2023) ............................................................................................... 10

Final Kentucky Infrastructure State Implementation Plan, Energy and Environment Cabinet (Jan. 11, 2019) ...................................................................................4, 6, 12, 20

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards* (Aug. 31, 2018) ...........................5, 17, 18

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* (Mar. 27, 2018) ........................................................................4, 12, 15

**INTRODUCTION**

The Clean Air Act (CAA) creates separate lanes for EPA and the States. Relevant here, EPA sets national air-quality standards for certain pollutants. But it is the States that determine how to meet those standards within their borders. They do so by creating state implementation plans (SIPs). EPA plays only a ministerial role in reviewing SIPs for compliance with the CAA.

In this case, EPA disapproved Kentucky's SIP. That disapproval was unlawful for many reasons. EPA acted on Kentucky's SIP years after the deadline for doing so. It ignored the cooperative-federalism framework at the heart of the CAA. And EPA deprived Kentucky of fair notice by relying on data created after the deadline for acting on Kentucky's SIP. To state the obvious, there was no way that Kentucky in 2018 could have predicted data that EPA did not release until 2020. EPA also disregarded Kentucky's reliance on an EPA memorandum instructing States about the standards to use when preparing SIPs.

Not only was EPA's disapproval of Kentucky's SIP unlawful, but it also is causing irreparable harm to Kentucky. For starters, EPA's disregard for the CAA's cooperative-federalism framework harms Kentucky's sovereignty. Beyond that, before Kentucky could comment on the disapproval of its SIP, EPA rushed out a federal implementation plan (FIP). That FIP will further harm Kentucky's sovereignty while simultaneously causing electrical-grid instability and higher electric prices in Kentucky. A stay

1

of EPA's denial of Kentucky's SIP while this matter is briefed and decided is amply warranted.

## BACKGROUND

### I. Statutory and regulatory background

The CAA is "an experiment in cooperative federalism." *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001). Congress enacted it to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." *Sierra Club v. EPA*, 60 F.4th 1008, 1012 (6th Cir. 2023) (citation omitted). Under the CAA's cooperative-federalism framework, EPA establishes and revises the National Ambient Air Quality Standards (NAAQS) for certain pollutants, like ozone. *Id.* Meanwhile, "[e]ach state has 'the primary responsibility' for ensuring that its ambient air meet the NAAQS for the identified pollutants." *Id.* at 1013 (quoting 42 U.S.C. § 7407(a)).

Part of that responsibility entails developing SIPs to implement the NAAQS and demonstrate "compliance with the Act's requirements." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 507 (2014). Among those requirements is the Act's "good neighbor" provision, which generally requires "upwind States to reduce emissions to account for pollution exported beyond their borders." *Id.* at 499. More specifically, a SIP must "contain adequate provisions" to prohibit in-state emissions from "contribut[ing] significantly to nonattainment in, or interfer[ing] with maintenance by, any other State" in its own NAAQS compliance. 42 U.S.C. § 7410(a)(2)(D)(i)(I).

The States are the frontline actors in developing their SIPs. EPA, by comparison, plays a lesser role. It has only "the ministerial function of reviewing SIPs for consistency with the Act's requirements." *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) (citation omitted).

## II. Kentucky's ozone interstate transport SIPs

### A. Kentucky's SIP for the 2008 ozone NAAQS

In 2008, EPA revised the NAAQS for ozone downward from 80 parts per billion (ppb) to 75 ppb, triggering Kentucky's obligation to revise its SIP. 2008 NAAQS, 73 Fed. Reg. 16,436, 16,437 (Mar. 27, 2008). EPA partially disapproved Kentucky's initial SIP as not complying with the CAA's "good neighbor" provision. Approval and Promulgation of Implementation Plans, 78 Fed. Reg. 14,681, 14,681 (Mar. 7, 2013). But after Kentucky worked with the agency to amend its SIP, EPA approved it. 2018 Ky. SIP Approval, 83 Fed. Reg. 17,123 (proposed Apr. 18, 2018).

### B. Kentucky's SIP for the 2015 ozone NAAQS

EPA lowered the ozone NAAQS again in 2015 from 75 to 70 ppb, triggering an obligation for SIP revisions addressing interstate transport. 2015 NAAQS, 80 Fed. Reg. 65,292, 65,443 (Oct. 26, 2015). Rather than try to promulgate nationally applicable regulations addressing "good neighbor" obligations under the new ozone NAAQS, EPA issued a guidance memorandum. EPA explained that States could "us[e] EPA's analytical approach" from its prior FIPs, "somewhat different analytical approaches within [the Agency's typical four-step framework for assessing good-neighbor compliance],"

or "alternative frameworks." Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* at 3 (Mar. 27, 2018), https://perma.cc/Y8YF-CQMB (March 2018 Memorandum). EPA presented this information "for purposes of assisting [S]tates in developing SIPs" for the new standard. *Id.* at 3. EPA's memorandum "recommend[ed] that [S]tates reach out to EPA Regional offices and work together to accomplish the goal of developing, submitting, and reviewing approvable SIPs," *id.* at 6, which Kentucky did, Kennedy Decl. ¶¶12–15, Exhibit 2.

Kentucky submitted its SIP on January 11, 2019. Final Kentucky Infrastructure State Implementation Plan, Energy and Environment Cabinet (Jan. 11, 2019), https://perma.cc/MES8-LSVJ (Ky. SIP). This triggered an 18-month deadline for EPA to "act on [Kentucky's] submission." 42 U.S.C. § 7410(k)(1)(B), (k)(2) (providing six months for a completeness finding and then 12 months to approve or disapprove). Kentucky's SIP explained that it meets the "good neighbor" provision because the plan contains "adequate provisions to prevent sources and other types of emissions activities within the Commonwealth from significantly contributing to nonattainment, or interfering with the maintenance, of downwind states with respect to the 2015 8-hour ozone NAAQS." Proposed Ky. SIP Disapproval, 87 Fed. Reg. 9,498, 9503 (proposed Feb. 22, 2022).

In reaching this conclusion, Kentucky followed EPA's guidance. First, it adopted EPA's general framework for evaluating compliance with the "good neighbor" provision. *Id.* at 9502–04. Kentucky identified monitoring sites projected to have problems attaining and/or maintaining the NAAQS in 2023 in part because of emissions produced within the Commonwealth. *Id.* at 9503–04. To identify these sites, Kentucky "relied on the results of EPA's modeling of . . . 2023, contained in the March 2018 [M]emorandum." *Id.* at 9503. "The March 2018 modeling indicate[d] that the Commonwealth was linked to four nonattainment receptors [two in Connecticut and two in Wisconsin] and one maintenance monitor above 1% of the NAAQS." *Id.* at 9,504.

Kentucky next assessed whether its contribution to the downwind sites was significant enough for them to be "linked." *Id.* To make this assessment, Kentucky relied on EPA's suggestion to use a contribution threshold of 1 ppb from an August 2018 memorandum published to guide the States in preparing their SIPs. *Id.*; *see also* Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards* (Aug. 31, 2018), https://perma.cc/G8EN-RN8Q (August 2018 Memorandum). "Based on the March 2018 modeling and application of a 1 ppb alternative contribution threshold, the Commonwealth found that it would not be linked as a significant contributor to the four nonattainment receptors in Connecticut and Wisconsin[.]" Proposed Ky. SIP Disapproval, 87 Fed. Reg. at 9,504. Kentucky thus concluded that its

SIP "contains adequate provisions to prevent" emissions in the Commonwealth "from contributing significantly to nonattainment" at these sites. *Id.*

Applying the 1 ppb threshold EPA suggested, "Kentucky remained linked to" one downwind maintenance receptor in Harford County, Maryland. *Id.* But Kentucky distinguished between nonattainment areas and maintenance areas because the latter "are already in attainment." Ky. SIP at 45. And "[u]pwind states should not be required to apply the same degree of reductions that are required for nonattainment areas." *Id.* Thus, the Commonwealth concluded that no further reductions were needed other than on-the-books and on-the-way measures. *Id.* at 46. Indeed, Kentucky noted it had significantly reduced its emission of NOx (an ozone precursor). *Id.* at 30, 45. And Kentucky's SIP outlined "coal-fired unit retirements, shutdowns, and repowering . . . as well as on-the-way reductions from natural gas conversions and retirements." Proposed Ky. SIP Disapproval, 87 Fed. Reg. at 9505. So Kentucky concluded that it needed to take no further steps.

### C. EPA Region 4's determinations regarding Kentucky's SIP

Almost two years after its statutory deadline to act on Kentucky's SIP, on February 22, 2022, EPA's Region 4 proposed to disapprove it for noncompliance with the "good neighbor" provision. *See id.* at 9,498. Region 4 explained that it evaluated Kentucky's SIP using "updated air quality modeling to project design values and contributions for 2023" that were not available when the Commonwealth made its submission in 2019. *Id.* at 9507. With this new modeling came newly impacted monitor sites—like

Bucks County, Pennsylvania—that Kentucky could not have possibly considered. *Id.* The new modeling also showed that Kentucky was no longer linked to the sites that it analyzed in its SIP. *Compare* Proposed Ky. SIP Disapproval, 87 Fed. Reg. at 9,504 (discussing how Kentucky's SIP addressed sites in Maryland and Wisconsin), *with id.* at 9,507 (only discussing sites in Pennsylvania and Connecticut).

Region 4 then used its "most recently available modeling" to identify linked sites using "a threshold of 1 percent of the NAAQS"—or .7 ppb—and rejected the 1 ppb threshold that EPA had suggested in its August 2018 memorandum. *Id.* at 9509. EPA "acknowledge[d] that the August 2018 memorandum generally recognized that a 1 ppb threshold may be appropriate for states to use." *Id.* But even though EPA suggested this standard, it faulted Kentucky for "not provid[ing] a technical analysis to sufficiently justify use of an alternative 1 ppb threshold at the linked, downwind monitors." *Id.* And Region 4 disagreed that on-the-books and on-the-way reductions were sufficient to address cross-state emissions. *Id.* at 9511–12. It also rejected arguments for a weighted approach to emissions reductions, *id.* at 9515, as well as "Kentucky's claims that local emissions reductions from the jurisdiction where the downwind receptor is located must first be implemented and accounted for before imposing obligations on upwind states under the interstate transport provision," *id.* at 9513. Because of this new data, unavailable when Kentucky submitted its SIP, Region 4 ultimately concluded that Kentucky's SIP fell short on its "good neighbor" obligation. *Id.* at 9,515.

### D. EPA rushes to impose a FIP

The CAA requires that when a SIP is found inadequate, EPA "shall require the State to revise the plan as necessary to correct such inadequacies." 42 U.S.C. § 7410(k)(5). In fact, that is exactly what happened with Kentucky's SIP for the 2008 ozone NAAQs. 2018 Ky. SIP Approval, 83 Fed. Reg. at 17,123–25. But here, EPA had no appetite for cooperative federalism. Instead, less than two months after proposing to disapprove Kentucky's SIP—and before the comment deadline expired on the disapproval—EPA unveiled its FIP. Federal Implementation Plan Addressing Regional Ozone Transport, 87 Fed. Reg. 20,036 (proposed Apr. 6, 2022).

The Proposed FIP is aggressive—to put it mildly. It imposes emissions reductions on several new industrial stationary sources (referred to as "non-Electric Generating Units" (non-EGUs)). *Id.* at 20,050. It also overhauls EPA's approach to EGUs.[1] *See id.* at 20,110–12, 20,115–17. Kentucky led 14 States in submitting a comment opposing the proposed FIP. They explained that EPA had offered "no justifiable reason" for applying the rule to the industries that it selected and that complying with the FIP's

---

[1] *See* EPA, *Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standards: Informational Webinar,* 7, 16 (Mar. 2022), https://perma.cc/YV7E-4QUM (requiring, for example, dynamic adjustments of States' emissions budgets beginning with the 2025 ozone season and forcing EGUs to install selective catalytic reduction controls or equivalent controls by the start of the 2027 ozone season).

emissions limitations would require "draconian emissions cuts" that would stress power grids. State Comment Letter 5, 9, Exhibit 8 (June 21, 2022).

**E. EPA's final disapproval of Kentucky's SIP**

Earlier this year, EPA published a final rule that included its disapproval of Kentucky's SIP revision. Air Plan Disapprovals, 88 Fed. Reg. 9,336, 9,356 (Feb. 13, 2023) (Ky. SIP Disapproval). EPA asserted that "the contents of each individual state's submission were evaluated on their own merits." *Id.* at 9,354. As EPA explained, individual "states may be able to establish alternative approaches to addressing their interstate transport obligations for the 2015 ozone NAAQS that vary from a nationally uniform framework" and that each such SIP would be judged "in light of the facts and circumstances of each particular state's submission." *Id.* at 9,340. As to Kentucky's SIP in particular, EPA's final disapproval references and relies on Region 4's determinations for disapproval. *See id.* at 9,356 (citing 87 Fed. Reg. at 9503–15). Indeed, EPA Headquarters did not conduct a new technical analysis expanding on Region 4's work.

Kentucky (No. 23-3216) and its Energy and Environment Cabinet (No. 23-3225) petitioned for review of EPA's disapproval of Kentucky's SIP. This motion to stay follows.

**ARGUMENT**

Courts evaluate four factors when assessing whether a litigant is entitled to a stay, with the first two being "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Those factors are: (1) whether the party seeking a stay "has made a strong showing"

that it is "likely to succeed on the merits"; (2) whether the party "will be irreparably injured absent a stay"; (3) whether a stay will "substantially injure" other parties; and (4) whether a stay is in "the public interest." *Id.* (citation omitted).

Each factor supports staying EPA's disapproval of Kentucky's SIP. On the merits, EPA ignored several parts of the CAA, including its requirement for cooperative federalism. EPA also acted arbitrarily and capriciously in disapproving Kentucky's SIP based on data unavailable when Kentucky had to submit its SIP. And EPA disapproved Kentucky's SIP even though Kentucky prepared it like EPA had instructed. EPA's rush to impose a FIP violates Kentucky's sovereignty and will irreparably harm Kentucky by causing electrical-grid instability and higher electric prices. EPA has no interest in acting unlawfully, and so the public interest decidedly favors a stay.

EPA opposes this motion. Kentucky did not request a stay from EPA because doing so would have been impractical. EPA's haste to impose its FIP upon Kentucky—publishing the proposed FIP before Kentucky could even dispute EPA's reasons for denying the SIP—shows that seeking a stay from the agency would have been impractical. *See Breeze Smoke, LLC v. U.S. Food & Drug Admin.*, 18 F.4th 499, 503 (6th Cir. 2021) (finding impracticability met when harm would occur before agency could evaluate stay request). In fact, the FIP is due to be published in the Federal Register any day now, and it instructs regulated entities to take action immediately. Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards at 347 (Mar. 15, 2023), https://perma.cc/3FUU-RBA3 (Pre-publication FIP) (noting the 2022

proposed FIP provided notice to regulated entities "that they should begin engineering and financial planning").

For the reasons that follow, the Court should stay EPA's disapproval of Kentucky's SIP pending review.

## I.    Kentucky is likely to prevail on the merits.

In disapproving Kentucky's SIP, EPA violated the Administrative Procedure Act (APA) in two ways. First, EPA acted "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). EPA disapproved Kentucky's SIP only by ignoring the CAA's statutory deadline, its cooperative-federalism structure, and the agency's limited role. And second, EPA's SIP disapproval is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A). EPA acted arbitrarily and capriciously by disapproving Kentucky's SIP based on data unavailable to the Commonwealth when it submitted the SIP. And EPA did so despite the Commonwealth having used a method suggested by EPA itself.

### A.    EPA failed to follow the CAA.

EPA violated the CAA in two ways when it disapproved Kentucky's SIP. First, it delayed acting until far beyond the statutory deadline, disapproving Kentucky's SIP based on data that did not exist until after EPA's deadline. Second, EPA abandoned its ministerial role to exercise discretion not committed to it by the CAA.

Start with the statutory deadline. Kentucky submitted its SIP on January 11, 2019. Ky. SIP at 1. Under the CAA, EPA had 18 months to approve or disapprove

11

Kentucky's SIP. 42 U.S.C. § 7410(k). In other words, EPA needed to act by July 11, 2020, which it did not do. EPA first published its proposed disapproval of Kentucky's SIP on February 22, 2022. *See* 87 Fed. Reg. at 9,498. And EPA's failure to meet its statutory deadline is important because it disapproved Kentucky's SIP based on data that *did not exist* when the Commonwealth submitted its SIP. *Id.* at 9507. If this method stands, EPA can deny whichever state plans it wants by simply waiting long enough for new, previously unavailable data to arrive.

The EPA has no authority to pull such a bait-and-switch. In March 2018, the EPA shared with Kentucky its "latest analysis for purposes of assisting" Kentucky in developing its SIP. March 2018 Memorandum at 3. That memorandum showed Kentucky which sites its emissions would be linked to. *Id.* at C-2. And EPA encouraged Kentucky to rely on this data; it presented the data "for purposes of assisting [S]tates in developing SIPs." *Id.* at 3. Kentucky took EPA at its word and analyzed this data to determine what to do. Ky. SIP at 18. Yet when EPA finally acted, it completely disregarded the data it provided earlier.

EPA's justification is not reassuring. It claims that "[i]t can hardly be the case that the EPA is prohibited from taking rulemaking action using the best information available to it at the time it takes such action." Ky. SIP Disapproval, 88 Fed. Reg. at 9,366. This misses the point. EPA is not just acting on a blank slate. It is disapproving Kentucky's plan that the CAA required Kentucky to submit years earlier—a plan EPA invited Kentucky to base on EPA-provided data. EPA's conduct here evaluates

Kentucky's plan "based on information that was not available at the time of submittal," thus "creat[ing] a moving target that would be impossible to meet." Determination of Attainment of the 1-Hour Ozone Standard, 69 Fed. Reg. 21,717, 21,727 (Apr. 22, 2004); *see also* Approval and Promulgation of Air Quality Implementation Plans, 68 Fed. Reg. 19,106, 19,120 (Apr. 17, 2003) (noting that EPA "has not required changes to submitted SIPs [due to] changes in factors and methodologies that occur after the SIP is submitted"). EPA cannot seriously claim that the CAA empowers it to delay acting until it creates new data allowing it to automatically disapprove Kentucky's SIP. That makes a mockery of the CAA's statutory deadline.

Next, in disapproving Kentucky's SIP, EPA stepped beyond its ministerial role, arrogating to itself power left to the States. The Act states that "air pollution prevention" is "the primary responsibility of States." 42 U.S.C. § 7401(a)(3); *see also id.* at § 7407(a) (giving each State "the primary responsibility for assuring air quality"). In contrast, EPA exercises only a "ministerial function" with respect to SIPs. *See Texas*, 829 F.3d at 428. The Act is clear when it limits EPA's discretion: EPA "shall approve" any SIP that meets the "applicable requirements" of the CAA. 42 U.S.C. § 7410(k)(3). For this reason, the Supreme Court has recognized that the CAA "relegate[s]" EPA to "a secondary role" after "setting the national ambient air standards." *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).

Yet EPA imagines the CAA differently. When issuing its final disapproval of Kentucky's SIP, EPA said that it "does not, however, agree with the comments'

characterization of the EPA's role in the [S]tate-Federal relationship as being 'secondary' such that the EPA must defer to state choices." Ky. SIP Disapproval, 88 Fed. Reg. at 9,367. But that is exactly what the statute commands—it was Congress that gave EPA its "secondary role." *Train*, 421 U.S. at 79. By failing to remain in its ministerial role, EPA transgressed the CAA's limits.

The Fifth Circuit very recently found a similar CAA violation in staying EPA's denial of Texas's and Louisiana's SIPs. There, EPA "invert[ed] the CAA" in a way that "reflects a misapprehension by the EPA of its authorized role in the SIP-approval process." Order at 16, Exhibit 7, *Texas v. EPA*, No. 23-60069, Dkt. 269-1 at 16 (May 1, 2023) (citation omitted). Put differently, "EPA's lack of deference to the States inverts the agency's ministerial function in this system of cooperative federalism." *Id.* at 17 (cleaned up).

### B.    EPA's bait-and-switch is arbitrary and capricious.

EPA's SIP disapproval is also arbitrary and capricious. Agencies must "reasonably consider[] the relevant issues and reasonably explain[]" whatever actions they take. *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) (citations omitted). EPA's disapproval of Kentucky's SIP is arbitrary and capricious in at least two ways.

First, EPA based its disapproval on data that *did not exist* when Kentucky submitted its SIP. Remember, Kentucky submitted its SIP in January 2019, and so the CAA required EPA to approve or disapprove Kentucky's SIP by July 2020. 42 U.S.C. § 7410(k). But EPA delayed acting for almost two years past this deadline. And when it

finally acted, EPA did not use the modeling data it published to help States develop their SIPs. March 2018 Memorandum at 1–2. Instead, it used data that became available *only after* its deadline expired. Ky. SIP Disapproval, 88 Fed. Reg. at 9,366 (referencing data that became available in November 2020).

Among other problems, this violates the fair-notice doctrine, which requires agencies to "provide 'fair notice' of requirements." *Breeze Smoke*, 18 F.4th at 503 (citation omitted). Before Kentucky submitted its SIP, EPA focused the States on modeling that it published to help them meet their CAA obligations. March 2018 Memorandum at 1–3. And Kentucky relied on this data when compiling its SIP. EPA then pulled a "surprise switcheroo" by assessing Kentucky's SIP against data unavailable until almost two years after Kentucky submitted its plan. *See Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005). As the Fifth Circuit recently summarized in staying two SIP denials on this basis, "[a]gencies have wide discretion to deploy their expertise, but they cannot move the administrative goalpost in so doing." Order at 20, *Texas v. EPA*, No. 23-60069 (May 1, 2023).

EPA claims that it "can hardly be the case" that the CAA "prohibit[s]" it from "using the best information available to it" even if that data was "not available to [S]tates during development of the SIP submissions or to the EPA during the period statutorily allotted for the EPA to take final action." Ky. SIP Disapproval, 88 Fed. Reg. at 9,365–66. But even if true, EPA must take account of Kentucky's "serious reliance interests" before changing which modeling it uses to assess Kentucky's SIP. *See DHS v. Regents of*

15

*the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (citation omitted). EPA cannot encourage Kentucky to rely on the data it provided, only to delay acting past the statutory deadline and then pull the rug out on a sovereign State. Aside from being arbitrary and capricious, this ignores the CAA's text and structure, which place States in the driver's seat. If EPA can simply ignore its statutory obligation until the data the States used to create their SIPs is out-of-date, EPA can effectively side-step any State plan despite the States' "primary" role. 42 U.S.C. § 7407(a).

Disapproving a SIP based on entirely new data is also contrary to longstanding EPA policy. This "longstanding policy" only requires States "to use the most current emission estimate models available at the time of SIP development." Approval and Promulgation of Air Quality State Implementation Plans, 81 Fed. Reg. 59,876, 59,878 n.15. EPA has previously "not required changes to submitted SIPs [due to] changes in factors and methodologies that occur after the SIP is submitted." 68 Fed. Reg. at 19,120. And that is because evaluating a SIP "based on information that was not available at the time of submittal would create a moving target that would be impossible to meet." Determination of Attainment of the 1-Hour Ozone Standard, 69 Fed. Reg. at 21,727. And that policy makes good sense. Previously, an environmental group sued EPA, claiming that a SIP action was "arbitrary and capricious because the plans relied on an outdated emissions model." *Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004) (Garland, J.). The D.C. Circuit disagreed. It reasoned that "[t]o require states to revise completed plans every time a new model is announced would lead to significant costs

16

and potentially endless delays in the approval processes." *Id.* at 308. EPA did not reasonably explain why it changed its longstanding policy in denying Kentucky's SIP. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016).

Second, EPA failed to account for Kentucky's reliance on EPA's August 2018 memorandum instructing States that they did not need to use the 1% standard EPA now claims is required. As part of its SIP, Kentucky determined the downwind sites to which it contributed enough to be "linked." To do this, Kentucky used the 1 ppb contribution threshold that EPA suggested. Proposed Ky. SIP Disapproval, 87 Fed. Reg. at 9,504.

EPA's August 2018 memorandum claimed to "make recommendations about what thresholds may be appropriate for use" in SIPs. August 2018 Memorandum at 1. The memorandum found that the 1% and 1 ppb thresholds were "generally comparable, overall," resulting in only a 7% difference "across all receptors." *Id.* at 4. While the memorandum said it "does not impose binding, enforceable requirements on any party," it provided this disclaimer because "State air agencies retain the discretion to develop good neighbor SIP revisions that differ from this guidance." *Id.* at 1. So in fact, the memorandum's disclaimer simply recognized that the CAA gives States the primary role of determining how to meet national standards.

EPA's disapproval flips the CAA's cooperative-federalism structure on its head. As EPA noted, the Commonwealth "found that it would not be linked as a significant contributor to the four nonattainment receptors" when it used the "March 2018

17

modeling and application of a 1 ppb alternative contribution threshold." Proposed Ky. SIP Disapproval, 87 Fed. Reg. at 9,504. Yet when it disapproved the SIP, EPA said that the Commonwealth "did not provide a technical analysis to sufficiently justify use of an alternative 1 ppb threshold at the linked, downwind monitors." *Id.* at 9,509.

Yet again, EPA penalizes Kentucky for doing what EPA said States could do: use a 1 ppb threshold. If EPA itself suggested that using a 1 ppb threshold was adequate, why would Kentucky need to "provide a technical analysis" on the back end agreeing with EPA's recommendation? EPA's about-face is especially problematic in the context of the CAA, which relegates EPA to a secondary role. EPA offers no reason why Kentucky contributing fewer than 1 ppb of ozone violates its good-neighbor obligation. EPA's own memorandum indicated that the difference between the standards was marginal. August 2018 Memorandum at 4 (finding standards "generally comparable" with only a 7% difference). And it is well-established that agencies act arbitrarily if they depart from even non-binding guidance when that guidance induced reliance. *Encino Motorcars*, 579 U.S. at 217, 222 (reliance on opinion letters about field operations handbook).

In sum, EPA has "transform[ed] [its] statutory role from that of a 'ministerial' overseer to one of a freewheeling dictatorial regulator." Order at 22, *Texas v. EPA*, No. 23-60069 (citations omitted). EPA should not be permitted to do so in violation of both the CAA and the APA.

18

## II.    Kentucky is suffering irreparable harm.

Kentucky faces two irreparable harms from EPA unlawfully disapproving its SIP. First, EPA is intruding on Kentucky's sovereignty. States "have sovereign interests to sue when they believe that the federal government has intruded upon areas traditionally within [S]tates' control." *Kentucky v. Biden*, 23 F.4th 585, 598 (6th Cir. 2022) (*Kentucky*); *see also* Horne Decl. ¶¶9–10, Exhibit 1. And as noted, the CAA gives States, not EPA, the primary role. Kennedy Decl. ¶¶17–20, Exhibit 2 (noting CAA's preference for state regulation). The SIP denial is an impermissible federal intrusion on Kentucky's sovereign interests, "disrupt[ing] the system of cooperative federalism enshrined in the Clean Air Act." *Texas*, 829 F.3d at 433 (citing *Michigan*, 268 F.3d at 1083). So a stay will protect Kentucky's sovereignty from unlawful infringement while the Court decides this case on the merits.

Second, imposition of the FIP will impose steep compliance costs and will harm Kentucky's economy. Kennedy Decl. ¶28–31 (discussing Kentucky's "immediate permitting burdens"); Brock Decl. ¶14, Exhibit 6 (noting 500 jobs threatened). By reducing the availability of electricity, EPA will subject consumers to higher prices. Purvis Decl. ¶¶33–34, Exhibit 4 (discussing increased rates); Barry Decl. ¶8 (noting costs "disproportionately borne" by retail customers). Plus, implementation of the FIP seriously strains and destabilizes Kentucky's power grid. Fuentes Decl. ¶¶5, 8, Exhibit 3; Purvis Decl. ¶¶38, 54 (noting how FIP harms grid reliability). "[P]lant closures, the threat of grid instability and potential brownouts alone constitute irreparable injury[.]" *Texas*, 829

F.3d at 434; *see also Kentucky*, 23 F.4th at 599 ("[S]tates have a recognized quasi-sovereign interest in the health and 'economic well-being' of their populaces." (citations omitted)). And with the government's sovereign immunity, these substantial costs "are unrecoverable" and "qualify as irreparable harm." *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (*Biden*). So Kentucky stands to suffer an injury to its sovereignty and to its economy.

## III.   The remaining factors favor a stay.

The final two stay factors require the Court to "assess[] the harm to the opposing party and weigh[] the public interest." *Nken*, 556 U.S. at 435. For stays of government action, these factors merge. *Id.* Here, both considerations decidedly favor staying EPA's disapproval of Kentucky's SIP.

EPA faces no harm if its disapproval of Kentucky's SIP is stayed pending review. If time really were of the essence, EPA would not have taken nearly five years to disapprove Kentucky's SIP and impose a FIP. *See Kentucky*, 23 F.4th at 610 (finding that "[t]he government's actions undercut its representations of great urgency"). Plus, Kentucky's SIP demonstrated that its emissions do not significantly contribute to nonattainment in downwind States or interfere with maintenance of the 2015 ozone NAAQS. Ky. SIP at 19. Even if there were deficiencies in Kentucky's SIP proposal (there are not), the CAA gives EPA two years to work with Kentucky to correct its SIP before a FIP must be issued. That's exactly what happened the last time EPA disapproved Kentucky's SIP. So EPA's rush to promulgate the FIP shortly after denying Kentucky's SIP

is as unnecessary as it is lawless.

As to the final stay factor, the "'public interest lies in a correct application' of the law." *Biden*, 57 F.4th at 556 (citation omitted). As discussed above, EPA's disapproval of Kentucky's SIP was both unlawful and arbitrary and capricious. EPA cannot now claim the public will be harmed by a stay when it delayed almost two years beyond its statutory deadline. And practically, Kentucky's interest in preserving its power grid and its ability to deliver ready access to affordable electricity outweighs any countervailing interest.

## CONCLUSION

The Court should stay the disapproval of Kentucky's SIP pending review.

Respectfully submitted by,

<u>s/ Matthew F. Kuhn</u>
Daniel Cameron
  *Attorney General*
Victor B. Maddox
  *Deputy Attorney General*
Matthew F. Kuhn
  *Solicitor General*
Christopher L. Thacker
  *Assistant Deputy Attorney General*
Harrison Gray Kilgore
Michael R. Wajda
  *Assistant Solicitors General*
Marc Manley
  *Assistant Attorney General*

Office of the Kentucky
Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Michael.Wajda@ky.gov

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation in Fed. R. App. P. 27(d)(2)(A) because it contains 5,196 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, Garamond, in 14-point font using Microsoft Word.

*s/ Matthew F. Kuhn*

## CERTIFICATE OF SERVICE

I certify that on May 23, 2023, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*

# ADDENDUM

Exhibit 1          Declaration of John G. Horne II, Director of the Office of Rate Intervention (May 22, 2023)

Exhibit 2          Declaration of Michael Kennedy, Director for Kentucky's Division for Air Quality (May 23, 2023)

Exhibit 3          Declaration of Cristobal Fuentes, Chief Executive Officer of North American Stainless (May 18, 2023)

Exhibit 4          Declaration of Jerry Purvis, Vice President of Environmental Affairs for East Kentucky Power Cooperative, Inc. (May 19, 2023)

Exhibit 5          Declaration of Nathanial Berry, Chief Operating Officer of Big Rivers Electric Corporation (May 19, 2023)

Exhibit 6          Declaration of Jeffrey D. Brock, Vice President of Business Development for Alliance Coal, LLC (May 23, 2023)

Exhibit 7          Order, *Texas v. EPA*, No. 23-60069 (5th Cir. Apr. 30, 2023)

Exhibit 8          State Comment Letter (June 21, 2022)