# 23-3216(L) / 23-3225(Con)

# United States Court of Appeals for the Sixth Circuit

COMMONWEALTH OF KENTUCKY (No. 23-3216),
KENTUCKY ENERGY AND ENVIRONMENT CABINET (No. 23-3225),

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, United States Environmental Protection Agency,

*Respondents*.

On Petition for Review of Final Action of the
United States Environmental Protection Agency
88 Fed. Reg. 9,336 (Feb. 13, 2023)

**BRIEF FOR STATES OF NEW YORK, CONNECTICUT, ILLINOIS, MARYLAND, MASSACHUSETTS, NEW JERSEY, PENNSYLVANIA, AND WISCONSIN; AND THE DISTRICT OF COLUMBIA; HARRIS COUNTY, TEXAS; AND THE CITY OF NEW YORK AS AMICI CURIAE IN SUPPORT OF RESPONDENTS**

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
ELIZABETH A. BRODY
 *Assistant Solicitor General*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
 *Assistant Attorneys General*
 *Environmental Protection Bureau*
   *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
28 Liberty Street, 23rd Floor
New York, New York 10005
(212) 416-6167

*(Counsel listing continues on signature pages.)*　Dated: December 18, 2023

# FEDERAL RULE OF APPELLATE PROCEDURE 29
Brief of an Amicus Curiae

*Commonwealth of Kentucky v. EPA*, No. 23-3216
*Kentucky Energy and Environment Cabinet v. EPA*, No. 23-3225

Under Rule 29(a)(2), all parties consent to the filing of this amicus brief.

Under Rule 29(a)(4), signatories Harris County, Texas, and the City of New York, state: (i) no party's counsel authored the accompanying brief in whole or in part; (ii) neither a party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person – other than the signatories of this brief – contributed money that was intended to fund preparing or submitting the brief.

 /s/ Elizabeth A. Brody
Elizabeth A. Brody
*Counsel of Record for Amici States of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, Pennsylvania, and Wisconsin; and the District of Columbia; Harris County, Texas; and the City of New York*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION AND INTERESTS OF AMICI CURIAE .....................1

BACKGROUND ..............................................................................4

    A.   Interstate Ozone Pollution and the Good Neighbor
        Provision ........................................................................4

    B.   Kentucky's SIP Submission ..........................................8

    C.   EPA's 2023 Good Neighbor Rule .............................. 10

    D.   Petitions for Review of the Disapproval Rule ......................... 10

ARGUMENT ................................................................................ 12

POINT I

The Petitions Should Be Transferred to the D.C. Circuit ........ 12

POINT II

EPA Reasonably Rejected Kentucky's Unsupported
Proposal to Use a Higher Screening Threshold .......................... 18

    A.   Kentucky's SIP Was Defective Even Under the Higher
        Screening Threshold. ............................................... 19

    B.   In Any Event, EPA Appropriately Determined That
        Kentucky Failed to Justify a Higher Screening Threshold. .. 21

    C.   A Higher, Static Screening Threshold Would Have
        Prejudiced Downwind States .................................... 23

POINT III

EPA's Actions Were Fully Consistent with Cooperative Federalism Principles ................................................................... 27

    A.   The Clean Air Act Requires EPA to Substantively Review SIPs for Compliance ................................................... 27

    B.   The Timing of EPA's Actions Did Not Violate Cooperative Federalism. ....................................................... 32

CONCLUSION ................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Alaska Dep't of Env't Conservation*, 540 U.S. 461 (2004) ................. 28, 31

*Arizona ex rel. Darwin v. EPA,*
815 F.3d 519 (9th Cir. 2016) ........................................................28-29

*ATK Launch Sys., Inc. v. EPA,*
651 F.3d 1194 (10th Cir. 2011) ........................................................ 12

*Atlantis Grp., Inc. v. Warner, Norcross & Judd,*
28 F.3d 1213, 1994 WL 319091 (6th Cir. 1994) ............................... 17

*Bunker Hill Co. v. EPA,*
572 F.2d 1286 (9th Cir. 1977) .......................................................... 28

*Catawba Cnty. v. EPA,*
571 F.3d 20 (D.C. Cir. 2009) ............................................................ 22

*Clark v. Adams,*
300 F. App'x 344 (6th Cir. 2008) ..................................................... 18

*EPA v. EME Homer City Generation, L.P.,*
572 U.S. 489 (2014) ................................................................... passim

*Kentucky Energy & Env't Cabinet v. EPA,*
No. 23-3605 (6th Cir. Nov. 9, 2023) ............................................13-15

*Kentucky v. EPA,*
No. 23-3216 (6th Cir. July 25, 2023) ......................................11, 16-17

*Kraus v. Taylor,*
715 F.3d 589 (6th Cir. 2013) ........................................................... 17

*Luminant Generation Co. v. EPA,*
675 F.3d 917 (5th Cir. 2012) ........................................................... 29

*Maryland v. EPA,*
958 F.3d 1185 (D.C. Cir. 2020) ....................................................... 30

**Cases**                                                                      **Page(s)**

*Mississippi Comm'n on Env't Quality v. EPA,*
  790 F.3d 138 (D.C. Cir. 2015) ....................................................................22

*Natural Res. Def. Council, Inc. v. Thomas,*
  838 F.2d 1224 (D.C. Cir. 1988) ................................................................. 12

*Nebraska v. EPA,*
  812 F.3d 662 (8th Cir. 2016) .................................................................28-29

*North Carolina v. EPA,*
  531 F.3d 896 (D.C. Cir. 2008) ...................................................................21

*North Dakota v. EPA,*
  730 F.3d 750 (8th Cir. 2013) .....................................................................28

*Oklahoma v. EPA,*
  723 F.3d 1201 (10th Cir. 2013) .................................................................28

*RMS of Ga., LLC v. EPA,*
  64 F.4th 1368 (11th Cir. 2023) ................................................................. 12

*Southern Ill. Power Coop. v. EPA,*
  863 F.3d 666 (7th Cir. 2017) ................................................................15-16

*Texas v. EPA,*
  726 F.3d 180 (D.C. Cir. 2013) ...................................................................31

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) ..................................................................... 15

*Texas v. EPA,*
  No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ................... 12

*West Virginia Chamber of Com. v. Browner,*
  166 F.3d 336, 1998 WL 827315 (4th Cir. 1998) ................................... 12

*Wisconsin v. EPA,*
  938 F.3d 303 (D.C. Cir. 2019) ...............................................................19-21

**Statutes**                                                      **Page(s)**

42 U.S.C.
    § 7409.................................................................................. 7
    § 7410......................................................................... passim
    § 7604...............................................................................33
    § 7607.............................................................10, 12, 14-15

**Regulations**

73 Fed. Reg. 16,436 (Mar. 27, 2008) ......................................24

80 Fed. Reg. 65,292 (Oct. 26, 2015) ........................................8

82 Fed. Reg. 1,733 (Jan. 6, 2017) ...........................................9

86 Fed. Reg. 23,054 (Apr. 30, 2021)......................................25

87 Fed. Reg. 9,498 (Feb. 22, 2022) ................................. passim

88 Fed. Reg. 9,336 (Feb. 13, 2023) ................................. passim

88 Fed. Reg. 36,654 (June 5, 2023) ............................... 4, 10, 34

**Miscellaneous Authorities**

Am. Lung Ass'n, *Health Impact of Air Pollution* (n.d.),
    https://www.lung.org/research/sota/health-risks ...............................4

Am. Lung Ass'n, *State of the Air: Connecticut: Fairfield* (2023),
    https://www.lung.org/research/sota/city-rankings/
    states/connecticut/fairfield ...............................................5

Am. Lung Ass'n, *State of the Air: New York: Suffolk* (2023),
    https://www.lung.org/research/sota/city-rankings/states/new-
    york/suffolk.................................................................6

Comment Letter from Att'ys Gen. (June 21, 2022),
    https://downloads.regulations.gov/EPA-HQ-OAR-2021-0668-
    0367/attachment_1.pdf ............................................. 4, 7

**Miscellaneous Authorities**                                       **Page(s)**

Environmental Protection Agency, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action* (2023), https://www.epa.gov/system/files/documents/2023-02/AQ Modeling TSD_Final Action %281%29.pdf ....................................5-6

Environmental Protection Agency, Final GNP O3 DVs_Contributions (2023), https://www.epa.gov/system/files/documents/2023-03/Final%20GNP%20O3%20DVs_Contributions.xlsx ........................ 6

Environmental Protection Agency, Health Effects of Ozone Pollution (updated May 24, 2023), https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution ........................... 4

Environmental Protection Agency, *Massachusetts* (n.d.), https://www3.epa.gov/region1/airquality/ma_over.html ..................... 6

H.R. Rep. No. 95-294 (1977) ................................................................ 31

Jim Carlton, *Study Links Deaths in Many Urban Areas to Increases in Ozone*, Wall St. J. (Nov. 17, 2004), https://www.wsj.com/articles/SB110064937989876117?st=oyi oi02cg4il4s2&reflink=desktopwebshare_permalink ........................... 4

Karl James Simon, *The Application and Adequacy of the Clean Air Act in Addressing Interstate Ozone Transport*, 5 Envtl. Law. 129 (1998) ................................................................................ 31

Kentucky Energy & Env't, *Final Kentucky State Implementation Plan* (2019), https://downloads.regulations.gov/EPA-R04-OAR-2021-0841-0008/content.pdf ....................................................... 20, 24

Mem. from Peter Tsirigotis, Director, EPA Off. of Air Quality Plan. and Standards to Reg'l Air Div. Dirs., Regions 1-10 (Aug. 31, 2018), https://www.epa.gov/sites/default/files/2018-03/documents/ transport_memo_03_27_18_1.pdf ...................................................... 21

**Miscellaneous Authorities**            **Page(s)**

Petition of New York Pursuant to Section 126 of the Clean Air Act, to the EPA (Mar. 12, 2018), https://downloads.regulations.gov/EPA-HQ-OAR-2018-0170-0004/content.pdf ................................................................... 6

Rachel Rettner, *High Ozone Levels Linked to Cardiac Arrest*, Fox News (updated Oct. 25, 2015), https://www.foxnews.com/health/high-ozone-levels-linked-to-cardiac-arrest ....................................................................... 4

Richard L. Revesz, *Federalism and Interstate Environmental Externalities*, 144 U. Pa. L. Rev. 2341 (1996) .................................... 31

S. Rep. No. 101-228 (1989) ................................................................ 5, 31

# INTRODUCTION AND INTERESTS OF AMICI CURIAE

In these cases, Petitioners the Commonwealth of Kentucky and the Kentucky Energy and Environment Cabinet challenge the U.S. Environmental Protection Agency's final rule disapproving a state implementation plan (SIP) for Kentucky. *See* Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336, 9,356 (Feb. 13, 2023) (Disapproval Rule). In the Disapproval Rule, EPA disapproved Kentucky's SIP—and SIPs submitted by 20 other States—for failing to satisfy the Clean Air Act's Good Neighbor Provision, which requires each State to prohibit its in-state emissions that will significantly impede other States' ability to achieve healthy air. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I).

Amici the States of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, Pennsylvania, and Wisconsin; and the District of Columbia; Harris County, Texas; and the City of New York are States and local governments that receive ozone-forming pollutants emitted from sources in upwind States, including Kentucky. Amici have strong interests in protecting their residents from the deleterious health effects of ozone pollution, and in protecting industry in their States from

being unfairly forced to compensate for upwind States' sources that operate without even rudimentary pollution controls.

Amici submit this brief to emphasize three points. First, because Petitioners challenge a nationally applicable rulemaking, these proceedings should be transferred to the D.C. Circuit, as required by the Clean Air Act. Although a motions panel of this Court previously denied EPA's motion to transfer, that decision is not binding on the merits panel, and this Court has since transferred a group of petitions challenging a closely related EPA rulemaking to the D.C. Circuit. The Disapproval Rule shares many of the same features that warranted transfer there. Moreover, as Petitioners' merits briefs now make clear, Petitioners challenge only nationwide aspects of the Disapproval Rule, and raise no challenge specific to Kentucky.

Second, there is no merit to Petitioners' arguments regarding EPA's rejection of a less stringent screening threshold for significant contribution. As an initial matter, the Disapproval Rule rejected Kentucky's SIP for reasons unrelated to the screening threshold or the other arguments Petitioners now advance. Petitioners' failure to challenge those dispositive findings requires denial of their petitions. In any event, EPA reasonably

rejected Kentucky's proposal to apply a less stringent screening threshold. Contrary to Petitioners' assertions, a nonbinding guidance document did not give Kentucky blanket permission to use the less stringent threshold. Indeed, that guidance stated that upwind States would need to justify their use of this alternative threshold—which Kentucky failed to do here.

Finally, contrary to Kentucky's contentions, EPA does not play a ministerial role in reviewing SIP submissions. Rather, the Act directs EPA to substantively evaluate States' SIP submissions to determine whether they will adequately prohibit interstate pollution. EPA's substantive review is critical to the Good Neighbor Provision's core purpose of protecting downwind States from upwind pollution.

# BACKGROUND

**A. Interstate Ozone Pollution and the Good Neighbor Provision**

Ozone pollution poses major health threats.[1] High levels of ozone can trigger asthma, worsen bronchitis and emphysema, and cause early death.[2] To protect their residents from ozone, Amici stringently regulate emissions of ozone-forming pollutants (known as "ozone precursors") from power plants, industrial facilities, and other in-state sources of air pollution.[3]

Although Amici tightly regulate emissions from sources within their borders, sources in dozens of upwind States generate ozone precursors that travel with the wind—sometimes thousands of miles away—into Amici's borders. *See* 88 Fed. Reg. 36,654, 36,670 (June 5, 2023). Indeed, because "many downwind States receive pollution from multiple

---

[1] Am. Lung Ass'n, *Health Impact of Air Pollution* (n.d.) (under "Health Effects of Ozone Pollution," click "What Can Ozone Pollution Do to Your Health?"). For sources available online, full URLs appear in the Table of Authorities. All websites last checked on December 18, 2023.

[2] EPA, Health Effects of Ozone Pollution (updated May 24, 2023); *see also* Rachel Rettner, *High Ozone Levels Linked to Cardiac Arrest*, Fox News (updated Oct. 25, 2015); Jim Carlton, *Study Links Deaths in Many Urban Areas to Increases in Ozone*, Wall St. J. (Nov. 17, 2004).

[3] *See* Comment Letter from Att'ys Gen. 8 (June 21, 2022).

upwind States," *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496 (2014), interstate pollution "is a major determinant of local air quality," S. Rep. No. 101-228, at 264 (1989).

Ozone and ozone precursors transported from upwind States contribute substantially to the elevated ozone levels in downwind States, including in Amici's jurisdictions.[4] Pollution from Kentucky in particular impacts many Amici. For example, Kentucky contributes 0.84 parts per billion (ppb) of ozone to Fairfield County, Connecticut—making it the monitoring location most severely affected by Kentucky's ozone precursor emissions nationwide. *See* 88 Fed. Reg. at 9,356. Approximately 138,000 children and adults in Fairfield County suffer from asthma and other respiratory diseases, and are particularly vulnerable to health risks from breathing ozone.[5]

---

[4] For example, ozone transported from upwind States is responsible for as much as 57 percent of the total ozone in Fairfield County, Connecticut; 28 percent of the total ozone in Cook County, Illinois; and 52 percent of the total ozone in Kenosha, Racine, and Sheboygan Counties, Wisconsin—all areas that struggle to meet federal ozone standards. *See* EPA, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action* app. D at D-2 (2023).

[5] *See* Am. Lung Ass'n, *State of the Air: Connecticut: Fairfield* (2023).

New York is also severely affected by ozone precursor emissions from Kentucky. For example, recently measured data shows that Kentucky contributes 0.74 ppb of ozone to Suffolk County, New York, where over 210,000 children and adults suffer from asthma and other respiratory diseases.[6] Indeed, in 2018, New York petitioned EPA to limit emissions from 17 power plants in Kentucky that were shown to significantly affect New York's air quality.[7] Likewise, Kentucky contributes more than 0.70 ppb of ozone to 17 monitoring locations in Maryland and three in New Jersey.[8] Massachusetts has also measured unhealthy spikes in ozone levels,[9] partly due to large plumes of ozone precursor emissions from Kentucky.

---

[6] *See* EPA, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action* app. C at C-4 (2023); Am. Lung Ass'n, State of the Air: New York: Suffolk (2023).

[7] *See* Petition of New York Pursuant to Section 126 of the Clean Air Act, to the EPA, app. B at 1-2 (Mar. 12, 2018).

[8] *See* EPA, Final GNP O3 DVs_Contributions (2023) ("2023gf Ozone Contributions" tab).

[9] *See, e.g.*, EPA, *Massachusetts* (n.d.) (registering exceedances of the ozone standards at seven different monitoring sites across Massachusetts in 2021).

To compensate for pollution from upwind States such as Kentucky, downwind States must further tighten their already stringent emissions-control regulations.[10] As the U.S. Supreme Court has recognized, squeezing further emissions reductions from downwind States is more costly and less effective than regulating upwind sources—particularly because many upwind sources have not been required to install low-cost, widely available pollution-control equipment. *Cf. EME Homer City*, 572 U.S. at 519-20 (discussing comparative costs of reduction efforts).

Congress enacted the Good Neighbor Provision of the Clean Air Act to limit transported pollution and to address these disparities. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Clean Air Act requires EPA to periodically review and set federal standards for the amounts of certain pollutants, including ozone or its precursor pollutants, that can safely be present in the air. *See id.* § 7409(a). When EPA establishes or revises a federal air quality standard, each State must submit a state implementation plan (SIP) consisting of air pollution regulations or other enforceable measures that will ensure the State achieves and maintains compliance with the

---

[10] *See also* Comment Letter from Att'ys Gen., *supra*, at 8.

federal standard. *See id.* § 7410(a)(1). Congress enacted the Good Neighbor Provision to require that each State, in addition to ensuring its own compliance, prohibit emissions that impede other States' compliance. *See id.* § 7410(a)(2)(D)(i)(I); *see also EME Homer City*, 572 U.S. at 509.

EPA may approve a SIP submission only "if it meets all of the applicable requirements of" the Clean Air Act, including the Good Neighbor Provision. 42 U.S.C. § 7410(k)(3). If EPA determines that a SIP has not adequately restrained interstate pollution, in violation of the Good Neighbor Provision, EPA must disapprove it. *Id.* § 7410(c)(1). Within two years of such disapproval, EPA must issue a federal implementation plan (FIP) to replace the inadequate SIP. *Id.*; *see also EME Homer City*, 572 U.S. at 507-08.

## B.   Kentucky's SIP Submission

In 2015, EPA strengthened the air quality standards for ozone, and set deadlines for States to achieve these standards. *See* 80 Fed. Reg. 65,292 (Oct. 26, 2015). Around this time, EPA's modeling projected that ozone precursors from two dozen upwind States—including Kentucky— would impair the ability of multiple downwind States to achieve or

maintain healthy levels of ozone. *See* 82 Fed. Reg. 1,733, 1,739-40 (Jan. 6, 2017).

But many upwind States, including Kentucky, failed to propose any emissions reductions in their SIPs to mitigate these effects. Instead, Kentucky (and other States) submitted SIPs that downplayed the severity of ozone pollution in downwind States or their in-state sources' contributions to such pollution. *See, e.g.*, 87 Fed. Reg. 9,498, 9,503-04 (Feb. 22, 2022) (describing Kentucky's SIP submission). For example, although Kentucky acknowledged that its pollution was affecting ozone levels in counties across the Eastern Seaboard, Kentucky maintained that it should not be required to adopt any emissions-reductions measures until those counties undertook more extensive pollution reduction measures. *See id.* at 9,512-13.

In February 2022, EPA proposed to disapprove Kentucky's SIP, *see id.* at 9,498, along with the SIPs of 20 other States. In February 2023, EPA finalized its disapproval of these 21 SIPs. *See* 88 Fed. Reg. at 9,336. In the Disapproval Rule, EPA explained that Kentucky had not adequately justified its omission of any emissions-reduction measures. *See id.* at 9,356.

## C.    EPA's 2023 Good Neighbor Rule

The Disapproval Rule started the clock on EPA's mandatory duty to promulgate a FIP for each of the 21 States that had submitted a disapproved SIP. *See* 42 U.S.C. § 7410(c)(1) (requiring EPA to promulgate a FIP within two years of disapproving a SIP). In June 2023, EPA published the Good Neighbor Rule, which contains FIP requirements for the 21 States with disapproved SIPs, as well as for two other States that did not submit SIPs. 88 Fed. Reg. at 36,656. Among other things, the Good Neighbor Rule requires power plants in these 23 States to consistently operate pollution-control equipment that they have already installed and, by 2026, to install additional equipment that is already commonly used across the power-generation sector. *See id.* at 36,659-61.

## D.    Petitions for Review of the Disapproval Rule

Several upwind States and other regulated parties filed petitions for review challenging the Disapproval Rule in seven circuit courts, even though the Clean Air Act specifies that petitions for judicial review of "nationally applicable" regulations must be filed in the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1); *see also* 88 Fed. Reg. at 9,380-81.

In this Court, the Commonwealth of Kentucky and the Kentucky Energy and Environment Cabinet each filed petitions for review challenging the Disapproval Rule as to Kentucky. *See* Case Nos. 23-3216 (Kentucky); 23-3225 (Cabinet). Before Petitioners submitted their opening briefs, they moved to stay enforcement of the Disapproval Rule while this proceeding was pending. EPA opposed these motions and moved to transfer the cases to the D.C. Circuit.

On July 25, 2023, in a nonprecedential order, a motions panel of this Court denied EPA's motion to transfer and stayed enforcement of the Disapproval Rule as to Kentucky, pending adjudication of the petitions for review. *See* Order 9, *Kentucky*, No. 23-3216 (July 25, 2023), ECF No. 39-2. Judge Cole dissented. *See id.* at 11 (Cole, J., dissenting).

# ARGUMENT

## POINT I

### THE PETITIONS SHOULD BE TRANSFERRED TO THE D.C. CIRCUIT

Amici agree with EPA that this Court should transfer the petitions to the D.C. Circuit. *See* Prelim. Resp'ts' Br. (EPA Br.) 31-54. Transfer is required by the plain text of the Act's judicial review provision and is consistent with the overwhelming weight of judicial authority interpreting that provision.[11]

As EPA explains (Br. 32-50), the Disapproval Rule is both "nationally applicable" and "based on a determination of nationwide scope or effect"—either of which is independently sufficient to establish venue in the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1); 88 Fed. Reg. at 9,380-81. Indeed, the Disapproval Rule possesses many of the same nationwide features as the Good Neighbor Rule that this Court found dispositive in transferring to

---

[11] *See RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1374 (11th Cir. 2023); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1200 (10th Cir. 2011); *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011); *West Virginia Chamber of Com. v. Browner*, 166 F.3d 336, 1998 WL 827315, at *8 (4th Cir. 1998) (table); *Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988).

the D.C. Circuit petitions challenging that rule. *See* Order, *Kentucky Energy & Env't Cabinet v. EPA*, No. 23-3605 (6th Cir. Nov. 9, 2023), ECF No. 19.

First, like the Good Neighbor Rule, the Disapproval Rule's national applicability is clear from the "face of the rulemaking." *Id.* at 4 (quotation marks omitted). Like the Good Neighbor Rule, the Disapproval Rule covers "ozone emitters in nearly two dozen far-flung states" and "tackles an issue affecting more than half of the country (when downwind states are counted)." *See id.* at 5. Indeed, the Disapproval Rule's national applicability is underscored by the breadth of the challenges to it. More than 60 petitioners have filed 25 actions in seven circuits (not including the D.C. Circuit) that challenge the Disapproval Rule as to 13 different States.[12]

Second, the Disapproval Rule, like the Good Neighbor Rule, is "based on the EPA's determinations of the nationwide scope and effect of downwind emissions transport." *See id.* at 7. Indeed, the fundamental similarities across the various cases challenging the Disapproval Rule

---

[12] *See* Resp't EPA's Mot. to Confirm Venue and to Expedite Consideration 8, *Utah v. EPA*, No. 23-1102 (D.C. Cir. May 15, 2023), Doc. No. 1999261 (summarizing litigation landscape).

establish that the Rule is grounded in "determination[s] of nationwide scope or effect." *See* 42 U.S.C. § 7607(b)(1). For example, Petitioners here challenge EPA's interpretation of a 2018 guidance document—which was addressed and distributed to all of EPA's regional offices. Merits Br. of the Commonwealth of Ky. (Kentucky Br.) 30-35; Br. of Pet'r Ky. Energy & Env't Cabinet (Cabinet Br.) 25-27. But EPA applied that same interpretation to various States' submissions in the Disapproval Rule. And petitioners in the Fifth, Eighth, Tenth, and Eleventh Circuits have each raised the same challenge regarding the 2018 guidance document that Petitioners raise here.[13] *See* EPA Br. 50. The common nature of these challenges illustrates that the Disapproval Rule's application of "uniform standards" to various States, *see* Order 7, *Kentucky Energy & Env't Cabinet*, No. 23-3605, *supra* (quotation marks omitted), "lie[s] at the core

---

[13] *See, e.g.*, Br. of Appellant La. Dep't of Env't Quality & State of La. 19-20, 49-51, *Texas v. EPA*, No. 23-60069 (5th Cir. May 30, 2023), ECF No. 332; Pet'rs' Opening Br. 29-32, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Aug. 10, 2023), Doc. No. 5305108; Prelim. Opening Br. of the State of Utah 30-31, *Utah v. EPA*, No. 23-9509 (10th Cir. July 14, 2023), Doc. No. 1101377; Br. of Ala. & Indus. Pet'rs 25-36, *Alabama v. EPA*, No. 23-11173 (11th Cir. Sept. 20, 2023), ECF No. 35.

of" EPA's action, *see Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016). Transfer to the D.C. Circuit is thus required.

Transfer is also prudent because, to date, seven different circuit courts have been asked to rule on the same aspects of the Disapproval Rule. This situation is plainly inconsistent with 42 U.S.C. § 7607(b), which, as this Court recently explained, aims to "facilitate[] the orderly development of the basic law under the Clean Air Act by eliminating piecemeal review of national issues in the regional circuits." *See* Order 4, *Kentucky Energy & Env't Cabinet, supra* (quotation marks and alterations omitted). Put differently, it is implausible that Congress enacted a venue provision specifically designating the D.C. Circuit as the sole venue for challenging a nationwide rule, while also permitting any challenger to circumvent this requirement simply by purporting to challenge only a discrete portion of such a rule. To the contrary, the Act's judicial review provision guards against precisely such "[o]verlapping, piecemeal, multi-circuit review of a single, nationally applicable EPA rule"—which is "destabilizing to the coherent and consistent interpretation and application of the Clean Air Act." *Southern Ill. Power Coop. v. EPA*, 863 F.3d

666, 674 (7th Cir. 2017); *see* Order 18-19, *Kentucky*, *supra* (Cole, J., dissenting).

For Amici, piecemeal review of the Disapproval Rule across multiple circuits has indeed proven destabilizing. Amici receive ozone pollution not only from Kentucky but also from multiple other States currently challenging the Disapproval Rule across multiple circuits, including: West Virginia (Fourth Circuit); Texas, Mississippi, and Louisiana (Fifth Circuit); Arkansas, Missouri, and Minnesota (Eighth Circuit); Oklahoma (Tenth Circuit); and Alabama (Eleventh Circuit). To protect their residents, Amici have spent substantial resources defending their interests across several circuits, in multiple procedural motions and on the merits. Allowing these challenges to continue in these various venues "utterly defeat[s] the statute's obvious aim of centralizing judicial review of national rules." *See Southern Ill. Power Coop.*, 863 F.3d at 673.

Amici also agree with EPA that this Court should reconsider the issue of venue at the merits stage, now that the full scope of Petitioners'

challenges has become clear.[14] *See* EPA Br. 51-54. Although a motions panel of this Court previously denied EPA's motion to transfer the petitions at the outset of this action, that order is not binding on the merits panel and is "subject to revision." *See Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013) (quotation marks omitted); *see also Atlantis Grp., Inc. v. Warner, Norcross & Judd*, 28 F.3d 1213, 1994 WL 319091, at *1 n.1 (6th Cir. 1994) (table) ("We are not bound by the motions panel's decision."). Here, the motions panel's denial turned in part on Petitioners' assertions that challenges to the Rule would involve "intensely factual determinations unique to Kentucky." *See* Order 6, *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023), ECF No. 39-2 (quotation marks omitted). Instead, as Petitioners' merits briefs now make clear, their challenges turn entirely on determinations that are *not* unique to Kentucky and instead apply nationwide, namely, (i) whether EPA may rely on modeling data that postdate SIP submissions; (ii) whether EPA may continue to

---

[14] Notably, three other circuits have reserved consideration of venue for the merits stage of challenges to the Disapproval Rule. *See* Order, *Alabama v. EPA*, No. 23-11173 (11th Cir. July 12, 2023), ECF No. 24; Order, *Nevada Cement Co. v. EPA*, No. 23-682 (9th Cir. July 3, 2023), ECF No. 27.1; Order, *Utah v. EPA*, No. 23-9509 (10th Cir. Apr. 27, 2023), Doc. No. 10994985.

use a percentage-based threshold for "significant" contribution under the Good Neighbor Provision; and (iii) whether EPA has statutory authority to substantively review SIP submissions. *See* Kentucky Br. 22-39; Cabinet Br. 20-27. Accordingly, "when considered in the present circumstances," the motion panel's reasoning is "inapposite." *See Clark v. Adams*, 300 F. App'x 344, 349 (6th Cir. 2008).

## POINT II

### EPA REASONABLY REJECTED KENTUCKY'S UNSUPPORTED PROPOSAL TO USE A HIGHER SCREENING THRESHOLD

The Good Neighbor Provision requires an upwind State to control in-state emissions that "contribute *significantly*" to a downwind State's inability to achieve or maintain the federal air quality standards. 42 U.S.C. § 7410(a)(2)(D)(i)(I) (emphasis added). EPA has long interpreted the word "significantly" to screen in contributions of pollution at or above 1 percent of the relevant federal air quality standards. *See* 88 Fed. Reg. at 9,342. Here, the 1 percent screening threshold was equal to 0.70 parts per billion (ppb) of ozone. Yet Kentucky's SIP proposed to discard the 0.70 ppb screening threshold in favor of a less demanding 1 ppb screening threshold, without any technical or State-specific justification. *See* 87 Fed.

18

Reg. at 9,509. EPA reasonably rejected Kentucky's unsupported proposal to apply the 1 ppb threshold. *See* 88 Fed. Reg. at 9,356.

## A. Kentucky's SIP Was Defective Even Under the Higher Screening Threshold.

As an initial matter, even if the Court agreed with the Petitioners about the SIP Disapproval's alleged deficiencies, which it should not (see *infra* at 21-26), the Court should nonetheless uphold the SIP Disapproval because it stands on independent grounds that are not challenged here.

Under the modeling data that Petitioners prefer, Kentucky still makes "significant" contributions to ozone pollution downwind for purposes of the Good Neighbor Provision but has failed to fulfill its obligation to propose any corresponding emissions reductions. *See* 87 Fed. Reg. at 9,505-06. Specifically, Petitioners' preferred data show that Kentucky contributes 1.52 ppb of ozone to a receptor in Harford County, Maryland.[15] *See id.* at 9,505; Cabinet Br. 22. Kentucky itself

---

[15] The Harford County, Maryland receptor was classified as a "maintenance receptor" (rather than a nonattainment receptor) because, although it was currently meeting attainment criteria, it was anticipated to have difficulty meeting such criteria in the future. *See Wisconsin v. EPA*, 938 F.3d 303, 326 (D.C. Cir. 2019) (quotation marks omitted) (explaining maintenance monitors).

acknowledged this linkage as potentially significant because it exceeds 1 ppb. *See* 87 Fed. Reg. at 9,506. Notwithstanding this acknowledgment, Kentucky's SIP proposed no measures to decrease the ozone it was sending into Maryland. Instead, Kentucky argued that Maryland should implement additional "local controls . . . before requesting upwind states to over-control their facilities."[16] Kentucky also asserted that "maintenance areas should not be treated the same as nonattainment areas."[17]

The Disapproval Rule explicitly considered these arguments and rejected them as legally erroneous. As EPA explained, local emission reduction measures in downwind States do "not absolve upwind states and sources from the responsibility of addressing their significant contribution." 87 Fed. Reg. at 9,513; *see* 88 Fed. Reg. at 9,356. That finding is correct as a matter of law, *see Wisconsin v. EPA*, 938 F.3d 303, 324 (D.C. Cir. 2019), and Petitioners have failed to challenge it here. Similarly, EPA rejected as inadequately supported Kentucky's summary assertion

---

[16] Kentucky Energy & Env't, *Final Kentucky State Implementation Plan* 40 (2019).

[17] *Id.* at 46.

that maintenance and nonattainment areas should be treated differently. 88 Fed. Reg. at 9,356; *accord* 87 Fed. Reg. at 9,514-15. Again, EPA's conclusion is correct as a legal matter, *see North Carolina v. EPA*, 531 F.3d 896, 910 (D.C. Cir. 2008); *Wisconsin*, 938 F.3d at 325-27, and Petitioners have not challenged it. Thus, even assuming this Court were to accept Petitioners' arguments about the screening threshold, Kentucky's SIP submission would remain defective for other reasons identified by EPA.

**B. In Any Event, EPA Appropriately Determined That Kentucky Failed to Justify a Higher Screening Threshold.**

In any event, EPA reasonably rejected Kentucky's unsupported proposal to apply a 1 ppb screening threshold, in light of Kentucky's documented linkages to downwind States. Petitioners misplace their reliance on an August 2018 EPA guidance document (the "Threshold Memo"), which compared EPA's longstanding 1 percent screening thresh-

old to two potential alternative screening thresholds (1 ppb and 2 ppb, respectively).[18]

Contrary to Kentucky's contentions, the Threshold Memo did not bind EPA to approving States' use of a 1 ppb threshold. *See* Kentucky Br. 35. Rather, the Threshold Memo clearly warned that it did "not impose binding, enforceable requirements on any party." Threshold Memo at 1. *Compare id.*, *with Mississippi Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 161 (D.C. Cir. 2015) (guidance warned it was "'not binding on states, tribes, the public or the EPA'"). In this respect, the Threshold Memo was consistent with other nonbinding guidance documents that EPA had previously issued to States ahead of other SIP submission deadlines. *See, e.g.*, *Mississippi Comm'n on Env't Quality*, 790 F.3d at 147-48; *Catawba Cnty. v. EPA*, 571 F.3d 20, 33-34 (D.C. Cir. 2009) (per curiam). To the extent Kentucky's SIP assumed that the Threshold Memo bound EPA, that assumption was not reasonable from the face of the document.

Nor did the Threshold Memo create a "presumptively approvable" threshold for all States. *See* Kentucky Br. 35; Cabinet Br. 11-12. The

---

[18] Mem. from Peter Tsirigotis, Director, EPA Off. of Air Quality Plan. and Standards to Reg'l Air Div. Dirs., Regions 1-10 (Aug. 31, 2018).

Threshold Memo itself refutes this assertion by specifically warning that "[f]ollowing these recommendations does not ensure that EPA will approve a SIP revision in all instances where the recommendations are followed." Threshold Memo at 1; *see id.* ("[T]he guidance may not apply to the facts and circumstances underlying a particular SIP."). Accordingly, the Threshold Memo did not excuse any State from conducting the substantive, State-specific analysis that normally accompanies a SIP submission. *Contra* Kentucky Br. 35 *and* Cabinet Br. 26. Here, because Kentucky failed to submit *any* technical analysis in support of applying a 1 ppb threshold, EPA reasonably determined that Kentucky's submission was inadequate to support departing from EPA's longstanding 1 percent threshold. *See* 87 Fed. Reg. at 9,509.

**C.    A Higher, Static Screening Threshold Would Have Prejudiced Downwind States.**

Further, after reviewing multiple States' SIP submissions and public comments, EPA correctly determined that there was no sound basis for replacing a percentage-based screening threshold with a screening threshold of 1 ppb. *See* 88 Fed. Reg. at 9,342; 87 Fed. Reg. at 9,510.

Using a 1 percent threshold to screen for significant interstate contribution best effectuates the text and structure of the Act. The Act is dynamic: EPA must reevaluate federal air quality standards periodically in light of the latest science and, if appropriate, strengthen such standards to protect human health and the environment. After EPA strengthens such standards, the Clean Air Act requires each State to ensure both that it will meet the strengthened standards within its own borders and that it will prohibit emissions that impede other States' ability to meet the standards. See *supra* at 7-8. Achievement of continuously improving air quality standards is thus the touchstone of an upwind State's obligations both to its residents *and* to its neighbors. A percentage-based screening threshold faithfully implements this statutory scheme by tethering upwind States' good-neighbor obligations to the federal air quality standards that downwind States must meet, whereas a static screening threshold departs from the statutory scheme by decoupling upwind States' obligations from these standards.[19]

---

[19] *See* Comments of N.Y. State Dep't of Env't Conservation to Ky. Energy & Env't Cabinet 4 (Sept. 21, 2018), *in Final Kentucky State Implementation Plan*, *supra*, at p. 239.

A comparison of Kentucky's good-neighbor obligations under prior and current federal ozone standards illustrates the problem. In 2008, the federal air quality standards for ozone were 75 ppb—5 ppb higher than they are now. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008). In a rulemaking promulgated under those standards, modeling showed that Kentucky was projected to contribute 0.78 ppb of ozone to a monitor in Fairfield County, Connecticut. EPA flagged this 0.78 ppb contribution as significant because it exceeded 0.75 ppb—or 1 percent of the 75-ppb air quality standards. *See* 86 Fed. Reg. 23,054, 23,086 tbl. V.D-2 (Apr. 30, 2021).

In 2015, EPA tightened the federal air quality standards for ozone from 75 ppb to 70 ppb, making them more protective of human health and the environment. See *supra* at 8. The modeling that Petitioners prefer to use, which was released along with that more stringent standard, showed that Kentucky was projected to contribute 0.89 ppb of ozone to the same monitor. *See* Cabinet Br. 22. EPA flagged this 0.89 ppb contribution as significant because it exceeded 0.70 ppb—or 1 percent of the applicable 0.70-ppb air quality standards. 87 Fed. Reg. at 9,504. But had EPA instead adopted the 1 ppb threshold that Petitioners now urge, EPA would have arbitrarily ignored a *higher* contribution of ozone to the same

25

downwind location, even though the ozone standards had become more protective in the intervening years. *See id.* 9,510. In other words, applying a 1 ppb threshold would have allowed Kentucky to emit *more* pollution under the more protective 2015 ozone standards than under the less protective 2008 ozone standards, while requiring Connecticut to make up the difference. EPA correctly determined that such an approach was incompatible with the Act.

Indeed, if EPA had approved Kentucky's use of a less stringent 1 ppb threshold here, it would have meaningfully impaired downwind States' achievement of the federal ozone standards. For example, at a Connecticut location to which Kentucky was linked under all modeling versions, *see* Cabinet Br. 22 (comparing data at Site No. 90013007), the Threshold Memo predicted that applying the less stringent 1 ppb threshold would allow 3.28 ppb of pollution from upwind States—including all pollution from Kentucky, *see id.*—to go unaddressed. *See* Threshold Memo at 5. Given that ozone measurements at this site were projected to be 71.0 ppb, just 1 ppb above the federal ozone standards, failing to address more than 3 ppb of upwind contribution could determine whether those standards were achieved. In this situation, EPA correctly reasoned

that using a 1 ppb threshold would have allowed States with a significant and meaningful impact on a downwind State's attainment to evade their good-neighbor obligations.

## POINT III

### EPA's Actions Were Fully Consistent with Cooperative Federalism Principles

**A. The Clean Air Act Requires EPA to Substantively Review SIPs for Compliance.**

Kentucky errs in arguing that the Clean Air Act confines EPA to a "secondary" or "ministerial" role in reviewing States' SIP submissions, or that EPA exceeded its statutory authority in disapproving Kentucky's SIP here. *See* Kentucky Br. 35-39. While States have authority to select the particular pollution-control measures and strategies that they will use to fulfill their responsibilities under the Act, States possess no authority to ignore their pollution-control responsibilities altogether, as Kentucky suggests. Nor does cooperative federalism require EPA to defer to obvious deficiencies in a State's SIP submission.

The Clean Air Act vests EPA with authority to ensure that downwind States are protected from upwind pollution. Such protection is necessary because, as the Supreme Court has explained, downwind

States are disadvantaged by an "influx of out-of-state pollution they lack authority to control." *EME Homer City*, 572 U.S. at 495. Thus, to protect downwind States, Congress gave EPA "substantive authority to assure that a state's proposals comply with the Act, not simply the ministerial authority to assure that the state has made *some* determination." *See Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 531 (9th Cir. 2016); *see also Alaska Dep't of Env't Conservation*, 540 U.S. 461, 490 (2004) (Congress vested EPA with "explicit and sweeping authority" to verify States' "substantive compliance" with the Act's permitting provisions); *Nebraska v. EPA*, 812 F.3d 662, 667 (8th Cir. 2016) (EPA's role is more than "ministerial"). Further, when a SIP does not comply with any substantive provision of the Act, EPA *must* disapprove that SIP. 42 U.S.C. § 7410(k)(3); *see also id.* § 7410(*l*). The Act thus makes plain that, while "states have the ability to create SIPs," those SIPs remain "subject to EPA review." *Oklahoma v. EPA*, 723 F.3d 1201, 1209 (10th Cir. 2013).[20]

---

[20] *See also North Dakota v. EPA*, 730 F.3d 750, 761 (8th Cir. 2013) (EPA is not limited to "the ministerial task of routinely approving SIP submissions"); *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1293-94 (9th Cir. 1977) (allowing States to self-certify compliance "would reduce EPA's approval of . . . [state] implementation plan[s] to a rubber stamp"—a result that "Congress did not intend").

Kentucky erroneously contends that a State's authority to determine the particular methods and control strategies that it will use to achieve compliance with the Act allows it to entirely exempt itself from its good-neighbor responsibilities. *See* Kentucky Br. 36. To be sure, the Act gives States discretion to select the specific pollution-reduction measures that are appropriate for that particular State to use to achieve compliance with the Act. *See, e.g., Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (upholding State's authority to regulate smaller stationary sources). But a State's discretion to select pollution-reduction measures is cabined by an important limiting principle: the cumulative effects of a State's choices must satisfy the Act's requirements, including the Good Neighbor Provision. *See id.* And it is EPA's role under the Act to determine whether States' SIP submissions ultimately satisfy the Act's requirements. *Arizona ex rel. Darwin*, 815 F.3d at 531; *Nebraska*, 812 F.3d at 667.

Here, EPA properly fulfilled its role, and did not "usurp[]" Kentucky's role (Kentucky Br. 35) within the Act's cooperative federalism structure. Kentucky did not propose *any* pollution-reduction measures to meet its obligations under the Good Neighbor Provision, much less propose

pollution-control measures based on a finding that those measures would fit Kentucky's individual circumstances while satisfying its good-neighbor obligations. Instead, Kentucky disclaimed any responsibility to downwind States to reduce its emissions. *See* 88 Fed. Reg. at 9,356. As a result, Kentucky exercised no discretion for EPA to displace. Further, as EPA properly determined, the ultimate effect of Kentucky's choices (or lack thereof) violated the Act's requirement that its SIP contain adequate measures to prohibit significant interstate pollution.

Further, to the extent Kentucky argues (Br. 36-37) that States have primary discretion to determine *if* they have any good-neighbor obligations, that contention is belied by the Act (see *supra* at 27-28), history, and common sense. Upwind States have little incentive to require in-state sources to reduce emissions for the benefit of downwind States—as demonstrated by Kentucky's SIP submission here. See *supra* at 9. Instead, allowing in-state sources to emit pollution that travels into downwind States permits an upwind State to "reap[] the benefits of the economic activity causing the pollution without bearing all the costs." *EME Homer City*, 572 U.S. at 495; *see Maryland v. EPA*, 958 F.3d 1185, 1190 (D.C. Cir. 2020) (per curiam). Congress thus required EPA to play

a substantive role in disapproving SIPs that fail to satisfy the Good Neighbor Provision, by preventing upwind States from engaging in a deregulatory "race to the bottom" to attract industry away from other States—at the expense of the public health, welfare, and economic interests of other States and their residents. *See Alaska Dep't of Env't Conservation*, 540 U.S. at 486; *Texas v. EPA,* 726 F.3d 180, 193 (D.C. Cir. 2013); *cf.* H.R. Rep. No. 95-294, at 330 (1977) (importance of strengthening federal rule); S. Rep. No. 101-228, at 289 (same).

Indeed, the history of the Good Neighbor Provision itself confirms that a substantive federal role has been critical to achieving necessary emissions reductions. Congress has repeatedly strengthened the Good Neighbor Provision because prior versions of the statute that depended on upwind States to police their own cross-state contributions proved ineffective. *See* Richard L. Revesz, *Federalism and Interstate Environmental Externalities*, 144 U. Pa. L. Rev. 2341, 2360 (1996); *see also* Karl James Simon, *The Application and Adequacy of the Clean Air Act in Addressing Interstate Ozone Transport*, 5 Envtl. Law. 129, 142-44 (1998). In the earliest version of the Good Neighbor Provision, Congress "relied solely on intergovernmental cooperation on the part of the state govern-

ments, with no federal role." Revesz, *supra*, at 2360. But relying purely on interstate cooperation was "an inadequate answer to the problem of interstate air pollution." *See* H.R. Rep. No. 95-294, at 330. Accordingly, in 1977, Congress strengthened the Good Neighbor Provision by requiring States to prohibit pollution that will "'prevent attainment or maintenance [of air quality standards] by any other State.'" *EME Homer City*, 572 U.S. at 499 (quoting 42 U.S.C. § 7410(a)(2)(E) (1976 ed., Supp. II)). And in 1990, Congress further strengthened the Good Neighbor Provision by requiring States to prohibit pollution that will "*contribute significantly to*" ozone problems in any other State. *Id.* (emphasis added) (quoting 42 U.S.C. § 7410(a)(2)(D)(i) (2006)). This history belies Kentucky's assertions that Congress intended EPA to defer to States' discretionary determinations about whether they possess any good-neighbor obligations at all.

## B. The Timing of EPA's Actions Did Not Violate Cooperative Federalism.

Kentucky also is mistaken in contending that EPA's delay in acting on Kentucky's SIP submission and its finalization of the FIP shortly after disapproval of Kentucky's SIP ran afoul of the Clean Air Act's cooperative

federalism structure. *See* Kentucky Br. 38-39. EPA's delay in acting on Kentucky's SIP did not alter EPA's independent statutory duty under the Clean Air Act to prevent significant pollution contributions to downwind States by the Act's attainment deadlines. Moreover, the Act provides a single remedy for delay—a court order compelling EPA to act—not an order estopping EPA from substantively reviewing SIP submissions. *See* 42 U.S.C. § 7604(a)(2). Notably, Kentucky did not seek that available remedy. Instead, it was downwind States and others, including several of the Amici here, who brought deadline enforcement litigation to compel EPA's action on several SIP submissions, including Kentucky's. *See, e.g.*, Consent Decree, *New York v. Regan*, No. 21-cv-252 (S.D.N.Y. Nov. 15, 2021), ECF No. 38.

Further, EPA's delay did not result in additional burdens being placed on Kentucky. *See* Kentucky Br. 39. To the contrary, the delay allowed sources in Kentucky to continue to emit pollution in violation of the Good Neighbor Provision for years beyond the time when a SIP should have limited such pollution. As a result, Kentucky has "reap[ed] the benefits of the economic activity causing the pollution without bearing all the costs," *EME Homer City*, 572 U.S. at 495, while downwind

States' "ability to achieve and maintain satisfactory air quality [has been] hampered by the steady stream of infiltrating pollution," *id.* at 496. This Court should reject Kentucky's attempt to further delay badly needed emissions reductions that still have not occurred eight years after the 2015 ozone standards were promulgated.

Contrary to Kentucky's argument, EPA properly finalized the Good Neighbor Rule, which issued FIPs for Kentucky and other States, shortly after disapproving Kentucky's SIP. *See* Kentucky Br. 38. The Supreme Court has squarely rejected the argument that the Clean Air Act requires EPA to postpone any federal action until States have a chance to cure their deficient SIPs. *EME Homer City*, 572 U.S. at 509 ("EPA is not obliged to wait two years or postpone its action even a single day"). Rather, "[t]he Act empowers the Agency to promulgate a FIP 'at any time' within the two-year limit" for replacing a deficient SIP. *Id.* Kentucky could have proposed a revised SIP at any point after the Disapproval Rule, and it can still do so today. And if that revised SIP were to be approved by EPA, it would supplant any FIP to which Kentucky was subject. *See* 88 Fed. Reg. at 36,842 (providing that States may exit the Good Neighbor Rule's FIP requirements by proposing adequate SIPs).

## CONCLUSION

This Court should deny the petitions.

Dated: New York, New York
December 18, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
MORGAN A. COSTELLO          JUDITH N. VALE
CLAIBORNE E. WALTHALL          *Deputy Solicitor General*
  *Assistant Attorneys General*
  *Environmental Protection Bureau*          */s/ Elizabeth A. Brody*[21]
                              ELIZABETH A. BRODY
                              *Assistant Solicitor General*

                              Office of the Attorney General
                              28 Liberty Street, 23rd Floor
                              New York, NY 10005
                              (212) 416-6167
                              elizabeth.brody1@ag.ny.gov

(*Counsel listing continues on next page.*)

---

[21] Counsel for the State of New York certifies that the other parties listed in the signature blocks consent to this filing.

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 St. Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

MICHELLE A. HENRY
  *Attorney General*
  *Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

JOSHUA L. KAUL
  *Attorney General*
  *State of Wisconsin*
17 West Main Street
Madison, WI 53703

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, DC 20001

CHRISTIAN MENEFEE
  *County Attorney*
  *Harris County, Texas*
1019 Congress, 15th Floor
Houston, TX 77002

SYLVIA HINDS-RADIX
  *Corporation Counsel*
  *City of New York*
100 Church Street
New York, NY 10007

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,488 words and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)-(7) and the corresponding local rules.

_/s/ Emily Paule_

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, the foregoing motion and brief for amici curiae were filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: New York, NY
         August 18, 2023


                                        */s/ Elizabeth A. Brody*